# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAISHAUNA GUIDRY, M.D., H.M.D.C., an individual,<br><br>Plaintiff,<br><br>v.<br><br>VITAS HEALTHCARE CORPORATION OF CALIFORNIA, a Delaware corporation; and DOES 1 through 25,<br><br>Defendants. | Case No.: 3:24-cv-00176-H-MMP<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 6.] |

On December 21, 2023, Plaintiff Kaishauna Guidry, M.D., H.M.D.C. ("Plaintiff") filed a complaint in the Superior Court of California, County of San Diego. (Doc. No. 1-2.) On January 25, 2024, Defendant VITAS Healthcare Corporation of California ("Defendant") removed the case to this Court. (Doc. No. 1.) That same day, Defendant filed an answer to Plaintiff's complaint. (Doc. No. 2.) On February 29, 2024, Defendant filed a motion to compel arbitration and stay proceedings. (Doc. No. 6.) On March 25, 2024, Plaintiff filed a response in opposition to Defendant's motion to compel arbitration. (Doc. Nos. 14, 15.) On April 1, 2024, Defendant filed a reply. (Doc. No. 17.) On April 17, 2024, the Court, pursuant to its discretion under Local Rule 7.1(d)(1), submitted the motion on the parties' papers. (Doc. No. 19.) For the reasons below, the

Court grants Defendant's motion to compel arbitration.

## BACKGROUND

On or about April 18, 2022, Defendant hired Plaintiff as a home care physician. (Doc. No. 6-2, Declaration of Riti Malhotra ("Malhotra Decl.") ¶ 3.) Defendant is a private healthcare company incorporated in Delaware with its principal place of business in Miami, Florida. (Id. ¶ 2.) Defendant provides hospice and other healthcare services to its clients in fourteen states, including California. (Id.) Defendant also purchases products from out-of-state vendors. (Id.)

In January of 2023, Defendant rolled out the Mutual and Voluntary Agreement to Arbitrate Claims (the "Agreement") to all of its existing employees. (Id. ¶ 3.) Defendant sent the Agreement to all current employees', including Plaintiff's, work email accounts via DocuSign. (Id. ¶¶ 3, 5.) On January 20, 2023, Defendant alleges that Plaintiff executed the Agreement via DocuSign. (Id. ¶ 11.) The Agreement states, in relevant part, that the parties "agree to use binding arbitration as the means to resolve all disputes that may arise out of or relate to [Plaintiff's] application for employment or employment with the Company, including termination of employment." (Malhotra Decl., Ex. 5 ¶ 1.) The Agreement covers "claims of discrimination, harassment and/or retaliation, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation, equitable law, or otherwise." (Id. ¶ 4.) The parties also "agree the [Federal Arbitration Act ("FAA")] applies to this Agreement and that a court of competent jurisdiction will be the sole determiner of whether the FAA applies." (Id. ¶ 3.)

On December 21, 2023, Plaintiff filed a complaint in the Superior Court of California, County of San Diego, alleging claims for: (1) discrimination on basis of color, ethnicity, and/or race, violation of California Government Code § 12940; (2) discrimination on basis of gender, violation of California Government Code § 12940; (3) harassment on basis of color, ethnicity, race, and/or gender, violation of California Government Code § 12940; (4) retaliation for complaining of illegal

discrimination and harassment, violation of California Government Code § 12940; (5) failure to prevent discrimination, harassment, and/or retaliation, violation of California Government Code § 12940; (6) failure to pay for all overtime wages, violation of California Labor Code §§ 510, 1194; (7) failure to timely pay wages, violation of California Labor Code § 204; and (8) whistleblower retaliation, violation of California Labor Code § 1102.5. (Doc. No. 1-2, Compl. ¶¶ 15–56.)  On January 25, 2024, Defendant removed the case to this Court.  (Doc. No. 1.)  That same day, Defendant filed an answer to Plaintiff's complaint.  (Doc. No. 2.)  By the present motion, Defendant moves to compel this action to arbitration pursuant to the Agreement.  (Doc. No. 6.)

## DISCUSSION

**I.   LEGAL STANDARDS**

    **A.   Federal Arbitration Act**

The Federal Arbitration Act ("FAA") established a clear preference for enforcing arbitration agreements.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements."); accord Mortensen v. Bresnan Comm., LLC, 722 F.3d 1151, 1160 (9th Cir. 2013) ("[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions.").  Accordingly, the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis removed).  Thus, courts must compel arbitration where (1) a valid agreement to arbitrate exists, and (2) the agreement to arbitrate encompasses the claims at issue.  Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000).  "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability." AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).  This presumption is particularly strong where the arbitration clause is broad and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  Id. (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 585 (1960)).  Federal

courts apply state contract law to determine whether a valid arbitration agreement exists, and what claims it encompasses. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1121 (9th Cir. 2008).

Section 2 of the FAA makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citation and quotation marks omitted). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016)). But "the liberal federal policy regarding the scope of arbitrable issues is inapposite when the question is whether a particular party is bound by the arbitration agreement." Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1291 (9th Cir. 2017) (citations omitted).

**B.    California Law Regarding Unconscionability**

In California, a court may refuse to enforce a contract that was "unconscionable at the time it was made." Cal. Civ. Code § 1670.5(a). A contract is unconscionable if, at the time of formation, there was "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Sanchez v. Valencia Holding Co., LLC, 61 Cal. 4th 899, 910 (2015) (quoting Sonic-Calabasas A, Inc. v. Moreno, 57 Cal. 4th 1109, 1133 (2013)). Courts have distilled this into two prongs—procedural and substantive unconscionability. Id. Thus, to be unconscionable, a contract must be both procedurally and substantively unconscionable. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power" while substantive unconscionability focuses on "overly harsh or

one-sided results." Sanchez, 61 Cal. 4th at 910. Both prongs need not be present to the same degree. Id. Specifically, courts apply a sliding scale—"the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa." Id. (quoting Armendariz, 24 Cal. 4th at 114). There is no "one true, authoritative standard for substantive unconscionability." Id. at 911. Instead, courts "have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness beyond 'a simple old-fashioned bad bargain.'" Id. (quoting Sonic-Calabasas, 57 Cal. 4th at 1160). These "various formulations" include "so one-sided as to shock the conscience," Pinnacle Museum Tower Assn. v. Pinnacle Market Dev., 55 Cal. 4th 223, 246 (2012), "unfairly one-sided," Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003), "overly harsh," Armendariz, 24 Cal. 4th at 114, and "unduly oppressive," Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 820 (1981). This analysis is "highly dependent on context" and the court should consider the general commercial background and the commercial needs of the particular trade or case." Sanchez, 61 Cal. 4th at 911–12 (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 450 (D.C. Cir. 1965)). The party asserting unconscionability bears the burden of proof. Id. at 911.

## II. ANALYSIS

Defendant produced a copy of the Agreement, which contains a broad arbitration clause and Plaintiff's electronic signature.[1] (Malhotra Decl., Ex. 5.) Plaintiff disputes that

---

[1] The FAA governs the Agreement. Pursuant to 9 U.S.C. § 2, an arbitration agreement only needs to evidence a transaction involving commerce for the FAA to apply. Courts broadly construe this to encompass the full reach of Congress' commerce power. Cit. Bank v. Alfabaco, Inc., 539 U.S. 52, 56 (2003). Indeed, the dispute itself need not implicate interstate commerce for the FAA to apply. Id.; Shepard v. Edward Mackay Enters., 148 Cal. App. 4th 1092, 1101 (2007). Rather, the FAA governs any arbitration agreement affecting commerce in any way, including where a company offering the agreement merely receives goods or resources from out of state. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 269 (1995); Katzenbach v. McClung, 379 U.S. 294, 304 (1964) (restaurant serving food from out of state was involved in interstate commerce). Here, Defendant

she signed the Agreement. (Doc. No. 14 at 9.) Plaintiff also argues that the Agreement is unenforceable because it is not signed by Defendant and the conduct between the parties does not support a finding of an agreement to arbitrate claims. (Id. at 9–12.) Plaintiff further challenges Defendant's motion to compel arbitration on the grounds that the Agreement is unconscionable. (Id. at 12–18.) The Court first addresses the authenticity of Plaintiff's electronic signature.

### A. Plaintiff's Electronic Signature

A party moving to compel arbitration meets its initial burden by attaching a copy of a purported agreement to arbitrate along with the nonmoving party's signature. Espejo v. So. Cal. Permanente Med. Grp., 246 Cal. App. 4th 1047, 1060 (2016). If the nonmoving party challenges the authenticity of her signature, the moving party is then required to establish its authenticity by a preponderance of the evidence. Id. ("Once Espejo challenged the validity of that signature in his opposition, defendants were then required to establish by a preponderance of the evidence that the signature was authentic."). The moving party may submit such evidence in its moving papers or on reply when authenticity is challenged. Id.; see also Ruiz v. Moss Bros. Auto Grp., Inc., 232 Cal. App. 4th 836, 847–48 (2014).

Under California Civil Code Section 1633.7, an electronic signature "has the same legal effect as a handwritten signature." Ruiz, 232 Cal. App. 4th at 843. "Still, any writing must be authenticated before the writing . . . may be received in evidence." Id. (citing Cal. Evid. Code § 1401). Pursuant to California Civil Code Section 1633.9(a), "an electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Courts have previously held that the moving party

---

provides hospice and other healthcare services to its clients in fourteen states, including California. (Malhotra Decl. ¶ 2.) Defendant also purchases products from out-of-state vendors. (Id.) Accordingly, Defendant's business affects interstate commerce sufficiently for the FAA to apply.

meets this burden by submitting a declaration detailing the company's "security precautions regarding transmission and use of an applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the [agreement]." See Espejo, 246 Cal. App. 4th at 1062.

Here, Defendant met its initial burden by attaching a copy of the Agreement, which contains a broad arbitration clause and Plaintiff's electronic signature. (Malhotra Decl., Ex. 5); see Espejo, 246 Cal. App. 4th at 1060. Plaintiff challenges the authenticity of her signature, arguing that she "denies seeing, reviewing, understanding, and signing" the Agreement. (Doc. No. 14 at 11.) In its moving papers and on reply, Defendant provides evidence detailing the security precautions regarding the transmission and use of Plaintiff's username and password as well as the steps Plaintiff would have taken to execute the Agreement electronically. (Malhotra Decl., Exs. 1–5; Doc. No. 17-1, Declaration of Lino Vargas ("Vargas Decl.").) Specifically, Defendant provides each employee with a unique work email account. (Malhotra Decl. ¶ 4.) In order to access this unique email account, employees are required to create a unique and secure password. (Id.) Defendant's email system automatically prompts employees to change their passwords approximately every three months in order to ensure that only that specific employee can access and view the emails sent to their work email account. (Id.)

In January of 2023, all current employees, including Plaintiff, received the Agreement through their work email accounts via DocuSign. (Id. ¶¶ 3, 5.) Plaintiff would have then been required to use her unique username and password to access the email. (Id. ¶¶ 4, 9.) Importantly, only the person who has access to the email address and secure password is able to access, review, and sign the Agreement. (Id. ¶ 9.) Should someone using an email address other than the intended recipient attempt to access, review, and sign the Agreement, DocuSign generates an error message and denies access. (Id.) The email which contained the Agreement states that Defendant is providing the Agreement to the employee and explains why Defendant was sending the Agreement. (Id., Ex. 1.) Upon clicking "Review Document" at the top of the email, Plaintiff would have then been

7

brought to a separate page which would have allowed her to review and sign the Agreement. (Id. ¶ 6 & Ex. 1.) When an employee elects to sign the Agreement, DocuSign generates an electronic notification in the form of a "Certificate of Completion." (Id. ¶ 8.) The Certificate of Completion shows which documents, if any, the employee signed, along with the date, time, name, IP address, and email address of the person who signed the document. (Id.) According to the Certificate of Completion, Plaintiff executed the Agreement on January 20, 2023, at approximately 4:54 p.m. through her work email account. (Id., Ex. 5.) Further, the IP address listed on the Certificate of Completion is 163.123.172.137 and below the IP address it states that the Agreement was "[s]igned using mobile." (Id.) As Defendant's Manager of IT Security Operations declared, IP address 163.123.172.137 is connected to Defendant's company-owned mobile devices, including the cellular phone it provided to Plaintiff as part of her employment. (Vargas Decl. ¶ 2.) Plaintiff does not allege that she gave anyone access to her company-owned mobile device or shared her work email password with anyone. (See Doc. Nos. 14, 15.)

In opposition, Plaintiff implies that someone from Defendant's IT department may have signed the Agreement. (Doc. No. 14 at 8.) But the only individuals that can gain access to an employee's email account are Defendant's Enterprise Engineering Team, and they can only do so with documented approval from both their manager and non-IT management. (Vargas Decl. ¶ 4.) Further, there is no record of any request to access Plaintiff's email account in January of 2023, when Plaintiff received and signed the Agreement. (Id.) Moreover, the personnel within Defendant's Enterprise Engineering Team do not have access to employees' mobile devices and they operate in a distinct geographical area from Plaintiff and utilize devices connected to different IP addresses. (Id. ¶ 5.)

Defendant has produced sufficient evidence to establish that the electronic signature was "the act of" Plaintiff. Cal. Civ. Code § 1633.9(a); Espejo, 246 Cal. App. 4th at 1062. Accordingly, Defendant has met its burden of authenticating Plaintiff's electronic signature. See Ruiz, 232 Cal. App. 4th at 844 ("The burden of authenticating an electronic

signature is not great.").

### B. Evidence of an Agreement to Arbitrate

Next, Plaintiff argues that the Agreement is unenforceable because Defendant did not sign it and the conduct between the parties does not support a finding of an agreement to arbitrate claims. (Doc. No. 14 at 9–12.) "The writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement." Serafin v. Balco Properties Ltd., LLC, 235 Cal. App. 4th 165, 176 (2015). Rather, "it is the presence or absence of evidence of an agreement to arbitrate which matters." Banner Ent., Inc. v. Superior Court, 62 Cal. App. 4th 348, 361 (1998) (emphasis removed); Cal. Civil Code § 3388; see also Serafin, 235 Cal. App. 4th at 177 ("Just as with any written agreement signed by one party, an arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that the party seeking enforcement has performed or offered to do so."). "Evidence confirming the existence of an agreement to arbitrate, despite an unsigned agreement, can be based, for example, on 'conduct from which one could imply either ratification or implied acceptance of such a provision.'" Serafin, 235 Cal. App. 4th at 176 (quoting Banner Ent., 62 Cal. App. 4th at 361).

Here, Defendant authored the Agreement and the terms of the Agreement evidence an intent to be bound by the Agreement: "The Company and I each waive and relinquish our respective rights to bring a claim against the other in court . . . ." (Malhotra Decl., Ex. 5 ¶ 2.) Further, Defendant promptly moved to compel arbitration and stay proceedings. (Doc. No. 6.) Such evidence confirms the existence of an agreement to arbitrate. See Serafin, 235 Cal. App. 4th at 176–77. Accordingly, Plaintiff must show the Agreement is both procedurally and substantively unconscionable in order for the Agreement to be deemed unenforceable. Sanchez, 61 Cal. 4th at 911.

### C. Procedural Unconscionability

Plaintiff argues that the Agreement is procedurally unconscionable because (1) the Agreement is contract of adhesion; (2) the applicable arbitration rules were not attached to

1  Agreement; (3) Defendant did not explain the Agreement to her; and (4) the Certificate of
2  Completion shows that the Agreement was reviewed and signed in twenty-seven seconds.
3  (Doc. No. 14 at 14–16.)  "Procedural unconscionability analysis focuses on oppression or
4  surprise."  Negrampa v. MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006) (quotation
5  marks omitted) (quoting Flores v. Transamerica Home First, Inc., 93 Cal. App. 4th 846,
6  853 (2007)).  "Oppression arises from an inequality of bargaining power that results in no
7  real negotiation and an absence of meaningful choice, while surprise involves the extent to
8  which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the
9  party seeking to enforce them."  Id. (quotation marks omitted).  If procedural
10 unconscionability exists, a court will scrutinize the substantive terms of the agreement.
11 Baltazar v. Forever 21, Inc., 62 Cal. 4th 1237, 1244 (2016).

12      Plaintiff first argues that the Agreement is procedurally unconscionable because it is
13 a contract of adhesion.  (Doc. No. 14 at 14–16.)  In support of her argument that the
14 Agreement is a contract of adhesion, Plaintiff argues that the Agreement "was purportedly
15 presented to her on a take-it-or-leave-it basis."  (Id. at 14.)  A contract of adhesion "is a
16 standardized contract, which, imposed and drafted by the party of superior bargaining
17 strength, relegates to the subscribing party only the opportunity to adhere to the contract or
18 reject it."  Scissor-Tail, 28 Cal. 3d at 817.  However, "California courts recognize that
19 adhesion only establishes a minimal degree of procedural unconscionability."  Hodsdon v.
20 DirecTV, LLC, No. 12-cv-02827-JSW, 2012 WL 5464615, at *5 (N.D. Cal. Nov. 8, 2012);
21 Loewen v. Lyft, Inc., 129 F. Supp. 3d 945, 957 (N.D. Cal. 2015); Gatton v. T-Mobile,
22 USA, Inc., 152 Cal. App. 4th 571, 581 (2007).  Here, as indicated in its title and throughout
23 the document, the Agreement was "mutual and voluntary."  (Malhotra Decl., Ex. 5 ¶ 1
24 ("The Company and its affiliates, subsidiaries, or parents . . . and I voluntarily enter into
25 this Mutual and Voluntary Agreement to Arbitrate Claims.").)  Plaintiff also had the choice
26 to decline to sign the Agreement.  (Id. ¶ 7.)  And Plaintiff has presented no evidence to the
27 contrary.  Even had Plaintiff presented evidence that the Agreement was a condition of her
28 employment, this would, at most, constitute a minimal amount of procedural

unconscionability. See Poublon, 846 F.3d at 1262 ("[T]he adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most."); Serpa v. California Surety Investigations, Inc., 215 Cal. App. 4th 695, 704 (2013) ("[T]he degree of procedural unconscionability of an adhesion agreement is low.").

Plaintiff next argues that the Agreement is procedurally unconscionable because the applicable arbitration rules were not attached to Agreement. (Doc. No. 14 at 15.) Plaintiff relies on Trivedi v. Curexo Tech. Corp., 189 Cal. App. 4th 387 (2010), to support her argument that the failure to provide the applicable arbitration rules renders the contract procedurally unconscionable. (Doc. No. 14 at 15.) More recent cases, however, have held that "the failure to specify or attach applicable rules does not increase the procedural unconscionability of [an employment application] or its arbitration provision." Dominguez v. Stone Brewing Co. LLC, No. 20-cv-00251-WQH-BLM, 2020 WL 3606396, at *7 (S.D. Cal. July 2, 2020); Hodsdon, 2012 WL 5464615, at *5 (holding that "procedural unconscionability can be avoided if the arbitration rules are incorporated into the contract by reference, such incorporation is clear, and the rules are readily available"); see also Lane v. Francis Capital Mgmt., 224 Cal. App. 4th 676, 690 (2014) (holding that failure to attach AAA rules to arbitration agreement did not render the agreement procedurally unconscionable, because rules were easily accessible on the Internet and plaintiff did not lack means or capacity to retrieve them). Moreover, the California Supreme Court has rejected the argument that a failure to attach arbitration rules renders the contract unconscionable. Baltazar, 62 Cal. 4th at 1246.

As for Plaintiff's claim that Defendant did not explain the Agreement to her, "[n]o law requires that parties dealing at arm's length have a duty to explain to each other the terms of a written contract." Ramos v. Westlake Servs. LLC, 242 Cal. App. 4th 674, 686 (2015). Regardless, Defendant explained the Agreement in the DocuSign email that was sent to all current employees, including Plaintiff. (Malhotra Decl. ¶¶ 3, 5 & Ex. 1.) And "[i]t is hornbook law that failing to read an agreement before signing it does not prevent formation of a contract." Iyere v. Wise Auto Group, 87 Cal. App. 5th 747, 759 (2023)

(citing Upton v. Tribilcock, 91 U.S. 45, 50 (1875) ("It will not do for a [person] to enter into a contract and when called upon to respond to its obligations, to say that [they] did not read it when [they] signed it, or did not know what it contained.")). Thus, Plaintiff's argument that the Agreement was reviewed and signed in twenty-seven seconds is also unavailing.

After reviewing the Agreement and the surrounding context, the Court agrees with Defendant that the Agreement is not procedurally unconscionable. As such, Plaintiff must make a strong showing of substantive unconscionability in order to succeed on her unconscionability argument. Armendariz, 24 Cal. 4th at 114; Serpa, 215 Cal. App. 4th at 704 (explaining that when the degree of procedural unconscionability is low, "the agreement will be enforceable unless the degree of substantive unconscionability is high").

### D. Substantive Unconscionability

Plaintiff argues that the Agreement is substantively unconscionable because it: (1) lacks reciprocity; (2) contains a class action waiver; (3) prohibits Plaintiff from recovering attorney fees; (4) requires both parties to bear their own costs; (5) waives Plaintiff's right to a jury trial; and (6) does not provide for a neutral arbitrator, sufficient discovery, or a proper decision that would allow for judicial review. (Doc. No. 14 at 16–18.) "Substantive unconscionability centers on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003) (quotation marks omitted) (quoting Kinney v. United HealthCare Servs., Inc., 70 Cal. App. 4th 1322, 1330 (1999)). Specifically, California law requires that arbitration agreements between employer and employees be bilateral. See Armendariz, 24 Cal. 4th at 117–18. "If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration." Id.

Here, the Agreement is bilateral. The Agreement expressly states that "the Company and [Plaintiff] agree to use binding arbitration as the means to resolve all disputes that may arise out of or relate to [Plaintiff's] application for employment or employment with the

Company." (Malhotra Decl., Ex. 5 ¶ 1).  The Agreement also states that arbitration "is the exclusive remedy for all disputes" between the parties, and the Agreement "includes any such claims against the Company's affiliates, . . . owners, . . . [and] employees." (Id. ¶¶ 2, 5.)  Thus, Defendant, as well as Plaintiff, agreed to submit any claim they had against the other to binding arbitration.  (See id. ¶¶ 1–2, 5.)  This satisfies the requirement of bilateral consent to arbitration.  Armendariz, 24 Cal. 4th at 117–18.

   Plaintiff next argues that the Agreement is substantively unconscionable because it contains a class action waiver. (Doc. No. 14 at 17.)  As Defendant correctly notes on reply, this is not a class action lawsuit.  (See Compl.)  And even if this was a class action lawsuit, class action waivers are enforceable under both federal and state law.  Epic Systems Corp. v. Lewis, 584 U.S. 497 (2018); Truly Nolen of Am. v. Superior Ct., 208 Cal. App. 4th 487, 516 (2012).  Plaintiff also argues that the Agreement is substantively unconscionable because it prohibits Plaintiff from recovering attorney fees and requires both parties to bear their own costs.  (Doc. No. 14 at 16–18.)  But the Agreement does not prevent Plaintiff from recovering fees, costs, or any other form of relief allowed.  (See Malhotra Decl., Ex. 5.)  Rather, the Agreement expressly states that "[t]he arbitrator shall base resolution of all disputes solely upon the law governing the claims and defenses pleaded.  The arbitrator may not invoke any basis . . . other than such controlling law."  (Id. ¶ 14.)  Furthermore, the fact that the Agreement is otherwise silent on costs does not render the Agreement unenforceable.  See Armendariz, 24 Cal. 4th at 113 ("A mandatory employment arbitration agreement that contains within its scope the arbitration of [California Fair Employment and Housing Act ("FEHA")] claims impliedly obliges the employer to pay all types of costs that are unique to arbitration . . . .  The absence of specific provisions on arbitration costs would therefore not be grounds for denying the enforcement of an arbitration agreement.").

   Plaintiff also takes issue with the fact that the Agreement waives her right to a jury trial.  But again, this does not render the Agreement unconscionable.  Under both federal and state law, arbitration agreements are valid and enforceable.  See 9 U.S.C. § 2; Cal.

Code Civ. Proc. § 1281.  And contrary to Plaintiff's assertion, the Agreement provides for a neutral arbitrator: "[T]he arbitrator selected will be a retired judge or an otherwise qualified individual to whom the Company and [Plaintiff] agree, and will be subject to disqualification on the same grounds as would apply to a judge of such court."  (Malhotra Decl., Ex. 5 ¶ 14.)  Additionally, although the Agreement is silent as to discovery, (see Malhotra Decl., Ex. 5), express discovery language is not necessary because "when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim."  <u>Ramos v. Superior Court</u>, 28 Cal. App. 5th 1042, 1062 (2018) (quoting <u>Armendariz</u>, 24 Cal. 4th at 106).  Finally, the Agreement requires the arbitrator to issue a written award and judicial review is provided by statute under both federal and state law.  (Malhotra Decl., Ex. 5 ¶ 14); 9 U.S.C. §§ 9–11; Cal. Code Civ. Proc. § 1285.

Accordingly, Plaintiff has failed to meet her burden to show that the Agreement is substantively unconscionable.  See <u>Sanchez</u>, 61 Cal. 4th at 911.

/ / /

/ / /

/ / /

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to compel arbitration. (Doc. No. 6.) The Court compels Plaintiff to submit her claims against Defendant to arbitration and the parties are hereby ordered to proceed to arbitration in accordance with the terms of the Agreement. The Court continues all dates, if any, until the completion of arbitration but reserves the right to dismiss the action if the parties do not diligently pursue their claims before the arbitrator, or for any reason justifying dismissal. The Court orders the parties to file a joint status report regarding the arbitration within **six (6) months** from the date of this of this order, and to file a joint status report every **six (6) months** thereafter until the completion of arbitration. The Court further orders the parties to file a joint status report within **seven (7) days** following the completion of arbitration.

IT IS SO ORDERED.

DATED: May 9, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT